UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JEREMY A. PARKER | CIVIL ACTION |
| --- | --- |
| VERSUS | NO. 18-3666 |
| JOHN W. STONE OIL DISTRIBUTORS, L.L.C. | SECTION "L" (2) |

## ORDER & REASONS

Before the Court is Plaintiff's Motion for Partial Summary Judgment, R. Doc. 28. The motion is opposed R. Doc. 35. Plaintiff has filed a reply. R. Doc. 43. The Court now rules as follows.

### I. BACKGROUND

This case arises from injuries Plaintiff Jeremy Parker, a Jones Act seaman, allegedly sustained while working as a tankerman aboard Defendant's vessel, the *M/V PRESAGER*. Plaintiff claims that a co-worker pulled on a face wire and a line popped, resulting in a 10-pound shackle falling approximately ten feet and hitting Plaintiff in the head. Plaintiff alleges this impact caused serious injuries to his neck and head and rendered him unfit for duty as a seaman. According to the Complaint, the sole and proximate cause of the accident was Defendant's negligence and maintenance of an unseaworthy vessel. Accordingly, Plaintiff seeks to recover past, present, and future physical, mental and emotional pain and suffering; loss of wages and wage-earning capacity; medical expenses; past and future physical disability; and past, present, and future maintenance and cure.

Defendant contests the cause of Plaintiff's accident and asserts that Plaintiff placed himself

in an unsafe position in violation of Defendant's safety rules. Further, Defendant alleges that Plaintiff failed to inspect the line in question prior to its use.

## II. PRESENT MOTION

Plaintiff moves for partial summary judgment under Federal Rule of Civil Procedure 56(c) on his claims that Defendant was negligent, Plaintiff was not contributorily negligent, and Defendant's vessel was unseaworthy. According to Plaintiff, it is undisputed that Plaintiff's injuries were a result of Defendant's negligence and provision of an unseaworthy vessel, and not a result of anything that Plaintiff did.

## III. LAW AND ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50.

Here, Plaintiff seeks an entry of partial summary judgment on his claims that Defendant was negligent, Plaintiff was not contributorily negligent, and Defendant's vessel was unseaworthy. Specifically, Plaintiff argues that: (1) Plaintiff's injuries could have been avoided if Defendant had inspected the work area and equipment; (2) the line in question only popped because of its deteriorated condition, and it would have been taken out of service if Defendant had inspected it, R. Doc. 28-1 at 6; and (3) Defendant cannot show that Plaintiff did anything wrong or was contributorily negligent, R. Doc. 28-1 at 8. Defendant opposes the motion, arguing that the case is rife with disputed facts, such as the cause(s) of Plaintiff's accident, that preclude the entry of summary judgment. R. Doc. 35 at 1. Defendant contends that the accident was caused because Plaintiff placed himself in an unsafe position in violation of Defendant's safety rules and because Plaintiff failed to inspect the line in question prior to its use. R. Doc. 35 at 1. The Court will discuss each of Plaintiff's claims in turn.

### a. Liability under the Jones Act

Under the Jones Act, 46 U.S.C. § 688, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury, either in whole or in part. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (en banc). An employer is also liable if its employees' negligence played "any part, even the slightest" in causing the injury or death for which damages are sought. *Id.* (citing *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957)).

However, the Fifth Circuit clarified that the employer's standard of care is not greater than that of ordinary negligence under the circumstances. *Gautreaux*, 107 F.3d at 339. "[A] Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of an injury does not establish liability." *Marvin v. Central Gulf Lines, Inc.*, 554 F.2d 1295, 1299 (5th Cir.1977), *cert. denied*, 434 U.S. 1035 (1978). To recover damages for his employer's negligence, a seaman must prove that his employer breached its duty of care, the standard for which is ordinary prudence under the circumstances. *Gautreaux*, 107 F.3d at 335–36.

Plaintiff in this case argues Defendant is liable under the Jones Act for negligently causing his injuries by: (1) failing to inspect the work area and equipment, which would have revealed the deteriorated condition of the line in question, and (2) failing to provide Plaintiff with a reasonably safe place to work. R. Doc. 28-1 at 6. According to Plaintiff, the depositions of Captain Anthony Burros and Captain Wayne Bishop reveal that the captains were responsible for the safety, maintenance, cleanliness, and performance standard of the equipment and tow, and as well as the safety of the crew. R. Doc. 28-1 at 6. Plaintiff submits that both Captains admitted that the line in question was deteriorated to such a point that if they had inspected it first, the line would have been taken out of service. R. Doc. 28-1 at 6. Additionally, Plaintiff avers that Captain Bishop further admitted that the only reason that the line popped was because of its deteriorated condition. R. Doc. 28-1 at 6. Defendant denies both of the above statements. R. Doc. 35-9 at 2.

In response, Defendant asserts that Plaintiff's Jones Act negligence claim involves questions of fact that should be reserved for the fact-finder. R. Doc. 35 at 7. Defendant argues that there are material issues of fact as to whether it acted negligently because Defendant contends that the accident was caused by Plaintiff standing in an unsafe position in violation of Defendant's safety rules and Plaintiff not thoroughly inspecting the line in question before using it. R. Doc. 35

at 8–9. Defendant points to Section 3.0 of its Safety Manual Policies & Procedures, which provides that "[n]o one should stand under a suspended load or should the operator pass a load over personnel," and Section 15 of its Safety Policy Manual, which advises to "[s]tand clear of lines or wires when they have a strain on them." R. Doc. 35 at 8–9. Despite these rules, Defendant avers that Plaintiff stood in an unsafe position under a load, thereby causing his own accident. Moreover, Defendant argues that prior to the incident, Plaintiff, as the tankerman handling the lines in question, was the person in the best position to thoroughly inspect the line for any fraying or deterioration. R. Doc. 35 at 9. Defendant submits that, as a tankerman, it was Plaintiff's duty to inspect the lines, as his job description states that "[tankermen] must also participate in the maintenance of the boat and barges." R. Doc. 35 at 9. But according to Defendant, Plaintiff did not do as his job required. R. Doc. 35 at 9. As such, Defendant argues that there are several genuine issues of material fact that preclude the entry of summary judgment. R. Doc. 35 at 9.

There remain genuine issues of material fact regarding liability under the Jones Act. It is unclear at this point whose negligence caused the accident. To grant summary judgment, a court must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d 395 at 399. This burden is not satisfied here, as a reasonable jury may differ as to whether Defendant or Plaintiff's alleged negligence was the cause of the accident and subsequent alleged injury. Accordingly, the Court declines to grant summary judgment on Plaintiff's Jones Act negligence claim.

**b. Contributory Negligence**

For a Jones Act negligence claim, "contributory negligence is an affirmative defense that diminishes recovery in proportion to the seaman's fault." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008). "To establish that a seaman is contributorily negligent, an employer must

5

prove negligence and causation." *Id.* The standard of care that is applied in these circumstances in ordinary prudence under the circumstances. *Id.* A seaman must not only rely on his employer to provide a safe work environment, but also rely on his own experience, training, or education; the reasonable person standard in a Jones Act negligence case thus becomes a standard of "the reasonable *seaman* in like circumstances." *Gautreaux*, 107 F.3d at 339 (emphasis in original). To establish causation for contributory negligence, an employer must show that the seaman's negligence "played any part, even the slightest, in producing the injury." *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982) (citing *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957)). However, the employer must show more than "but for causation" and demonstrate that the seaman's negligence was a legal cause of his injury. *Cenac Towing, Inc.*, 544 F.3d at 302.

Here, Plaintiff argues that Defendant cannot meet its burden of proof on its contributory negligence defense. R. Doc. 28-1 at 8. Plaintiff contends that there is no evidence or testimony that Plaintiff did anything wrong or that the incident occurred for any reason other than the popping of the line in question. R. Doc. 28-1 at 8. Defendant avers, however, that Plaintiff is improperly seeking a summary judgment determination on the allocation of fault, R. Doc. 35 at 15, which "involve[s] credibility determinations and the resolution of disputed facts, findings at the very heart of the jury function," *Hardy v. Wal-Mart Stores, Inc.*, 237 F.3d 632 (5th Cir. 2000) (unpublished opinion). Defendant submits that Plaintiff placed himself in an unsafe position in violation of Defendant's safety manuals and failed to inspect the line prior to its use. R. Doc. 35 at 15. Both of these contentions raise a genuine dispute of material fact as to Plaintiff's role in causing his accident. R. Doc. 35 at 15. As such, Defendant argues that summary judgment as to the allocation of fault would be inappropriate. R. Doc. 35 at 15.

As discussed above, there remain genuine issues of material fact as to whose negligence caused the accident. To grant summary judgment, a court must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d 395 at 399. This burden is not satisfied here, as a reasonable jury may differ as to whether Defendant's alleged negligence was the sole cause of the accident or whether Plaintiff's alleged negligence contributed, in whole or part, to Plaintiff's injury. Accordingly, the Court declines to grant summary judgment on Plaintiff's contributory negligence claim.

c. **Unseaworthiness Claim**

"The owner of the vessel has a duty to provide a vessel that is reasonably fit for its intended use. This duty to provide a seaworthy vessel requires that the vessel, its gear, appurtenances, and operation must be reasonably safe." *Drachenberg v. Canal Barge Co.*, 571 F.2d 912, 918 (5th Cir. 1978). This duty extends to "the hull of the vessel, the vessel's cargo handling machinery, lines and tackle and all kinds of equipment either belonging to the vessel owner or brought aboard by others." *Bush v. Diamond Offshore Co.,* 46 F. Supp. 2d 515, 520 (E.D. La. 1999). "A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage might be improper." *Nichols v. Weeks Marine, Inc.,* 513 F. Supp. 2d 627, 635 (E.D. La. 2007) (*quoting Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499–500 (1971)). The duty of seaworthiness does not, however, extend to providing "a perfect or accident-free vessel." *Phillips v. Western Co.,* 953 F.2d 923, 928 (5th Cir. 1992).

Plaintiff argues that there is a high burden on a vessel owner to provide its crew with a seaworthy ship and that "[t]his duty is absolute, non-delegable and completely independent of the

7

Jones Act requirement to exercise reasonable care." *Foster v. Destin Trading Corp.*, 700 So. 2d 199, 202 (La. 1997). Further, Plaintiff contends, because liability for an unseaworthy condition does not depend on negligence, fault, or blame, "if an owner does not provide a seaworthy vessel, then no amount of prudence will excuse him, whether he knew or should have known of the unseaworthy condition." R. Doc. 28-1 at 5 (citing *Foster*, 700 So. 2d at 202). The Fifth Circuit has held that "unseaworthiness can be manifested by an unsafe method of work, such as the failure by a shipowner to provide adequate equipment for the performance of an assigned task." *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354–55 (5th Cir. 1988).

In response, Defendant argues that summary judgment on the issue of unseaworthiness is generally inappropriate and should be left to the fact-finder to determine what facts constitute unseaworthiness. R. Doc. 35 at 7–8. Defendant contends that Plaintiff's motion for summary judgment as to the unseaworthiness claim should be denied because there are material issues of fact: (1) whether the rope was an unseaworthy condition; and (2) whether the alleged unseaworthy condition was a proximate cause of Plaintiff's injuries. R. Doc. 35 at 13. The Court will discuss each argument in turn.

To establish proximate cause in an unseaworthiness claim, a plaintiff must show not only that an unseaworthy condition existed aboard the ship, but also that the alleged unseaworthy condition caused his injuries. *See Offshore Exp., Inc.*, 845 F.2d at 1354. Defendant argues that Plaintiff does not meet this burden. R. Doc. 35 at 14. Defendant avers that to establish unseaworthiness, the injured seaman must show that the owner failed to provide a vessel that is "reasonably fit and safe for the purposes for which it was intended to be used." *Boudreaux v. United States of America*, 280 F.3d 461, 468 (5th Cir. 2002). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably

8

suited for her intended service." *Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336, 339 (1955). Defendant contends that because one line on the vessel in this case snapped does not necessarily make the vessel unfit for its intended purpose. R. Doc. 35 at 14.

Moreover, Defendant submits that Plaintiff will be unable to meet his burden of proof as to the causation of Plaintiff's alleged injuries. R. Doc. 35 at 14. Defendant argues that the case involves several genuine issues of material fact regarding medical causation and whether Plaintiff's alleged injuries were the proximate result of the accident that occurred on the vessel. R. Doc. 35 at 14. According to Defendant, it retained three separate physicians, who each performed independent medical examinations and concluded that Plaintiff's injuries were not caused by the alleged incident. R. Doc. 35 at 14. Furthermore, Defendant avers, one of the physicians who initially treated Plaintiff, Dr. Bourgeois, noted that all of Plaintiff's alleged symptoms resulting from the accident were resolved as of late March 2018. R. Doc. 35 at 14. Defendant contends that the opinions of these four doctors serve as a rebuttal to Plaintiff's current treating physicians and show that a genuine dispute of material fact regarding medical causation exists. R. Doc. 35 at 14. Defendant thus argues that determinations as to the cause of Plaintiff's alleged injuries are best left to the fact-finder and should be preserved for trial. R. Doc. 35 at 14.

Although the Court concludes that the rope was an unseaworthy condition, there remain genuine issues of material fact regarding whether the unseaworthy condition was a proximate cause of Plaintiff's injuries. To grant summary judgment on Plaintiff's unseaworthiness claim, the Court must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d 395 at 399. This burden is not satisfied here, as a reasonable jury may differ as to whether the unseaworthy condition was a proximate cause of Plaintiff's injuries. Accordingly, the Court declines to grant summary judgment on Plaintiff's unseaworthiness claim.

9

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment, R. Doc. 28, is hereby **DENIED**.

New Orleans, Louisiana, this 14th day of June, 2019.

ELDON E. FALLON
U.S. DISTRICT COURT JUDGE