UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JEREMY A. PARKER | CIVIL ACTION |
|---|---|
| VERSUS | NO. 18-3666 |
| JOHN W. STONE OIL DISTRIBUTORS, L.L.C. | SECTION "L" (2) |

**ORDER & REASONS**

Before the Court are the following motions: (1) Plaintiff's Motion *in Limine* to Exclude the Opinions of Robert Borison, R.Doc. 29; (2) Plaintiff's Motion *in Limine* to Exclude Cumulative Opinions of Dr. Everett Robert and Dr. Archie Melcher, R. Doc. 30; and (3) Defendant's Motion *in Limine* to Exclude the Opinions of Plaintiff's Safety Expert, Don J. Green, R. Doc. 31. Each motion is opposed. R. Docs. 33, 34, 36. The second and third motions have replies. R. Docs. 41, 46. The Court now rules as follows.

**I.   BACKGROUND**

This case arises from injuries Plaintiff Jeremy Parker, a Jones Act seaman, allegedly sustained while working as a tankerman aboard a vessel, the *M/V PRESAGER*, owned by Defendant John W. Stone Oil Distributors LLC. R. Doc. 1 at 2. Plaintiff claims a fellow crewmember pulled on a face wire, causing a line to pop, which resulted in a 10-pound shackle falling approximately ten feet and hitting Plaintiff in the head. R. Doc. 30-1 at 1. Plaintiff alleges this impact caused serious injuries to his neck and head and rendered him unfit for duty as a seaman. R. Doc. 30-1 at 1. According to the Complaint, the sole and proximate cause of the accident was Defendant's negligence and maintenance of an unseaworthy vessel. R. Doc. 1 at 2–

1

3. Accordingly, Plaintiff seeks to recover past, present, and future physical, mental and emotional pain and suffering; loss of wages and wage-earning capacity; medical expenses; past and future physical disability; and past, present, and future maintenance and cure. R. Doc. 1 at 3.

Defendant contests the cause of Plaintiff's accident and asserts Plaintiff placed himself in an unsafe position in violation of Defendant's safety rules. R. Doc. 35 at 1. Further, Defendant alleges Plaintiff failed to inspect the line in question prior to its use. R. Doc. 35 at 1.

## II. PRESENT MOTIONS

Before the Court are several overlapping motions: (1) Plaintiff's Motion *in Limine* to Exclude the Opinions of Robert Borison, R. Doc. 29; (2) Plaintiff's Motion *in Limine* to Exclude Cumulative Opinions of Dr. Everett Robert and Dr. Archie Melcher, R. Doc. 30; and (3) Defendant's Motion *in Limine* to Exclude the Opinions of Plaintiff's Safety Expert, Don J. Green, R. Doc. 31. Each motion is opposed. R. Docs. 33, 34, 36. The second and third motions have replies. R. Docs. 41, 46.

## III. LAW AND ANALYSIS

The admissibility of expert testimony is governed by Rule 702 of the Federal Rule of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule codifies the Supreme Court's decisions in *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The Court must act as a "gate-keeper" to ensure the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). This

requires the Court conduct a two-pronged assessment to determine whether the expert testimony is: (1) based on reliable methodology and (2) will assist the trier of fact to understand the evidence or to determine a fact in issue. *See Daubert*, 509 U.S. at 589–91.

### a. Whether Defendant's experts' reports are reliable

The first prong "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Wells*, 601 F.3d at 378 (quoting *Daubert*, 509 U.S. at 592–93). With respect to reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Ultimately, a court's role as a gatekeeper does not replace the adversary system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Proper deference is to be accorded to the jury's role "as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* (quoting *Viterbo*, 826 F.2d at 422).

### 1. Whether Defendant's liability expert used reliable methodology

Expert reports must be detailed in order to avoid "sketchy and vague" information. *See Sierra Club v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996). Moreover, expert reports must be based on a sufficient factual foundation and cannot be based simply on the unsupported beliefs and opinions of the expert himself. *See Daubert*, 509 U.S. at 590. When the expert opinion is "[not]

based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position," then the expert's opinion must be excluded. *See Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

Plaintiff argues the opinions of Defendant's liability expert, Robert Borison, should be excluded because they "are merely unsupported speculation and assumptions." R. Doc. 29-1 at 3. Plaintiff contends there are no documents that support Borison's conclusion that Plaintiff contributed to his own injury. R. Doc. 29-1 at 3. For example, according to Plaintiff, the USCG incident report makes no mention of Plaintiff being in an unsafe position when he was allegedly injured. R. Doc. 29-1 at 3.

In opposition, Defendant argues Borison's report cites to specific facts and data, such as "vessel safety procedures outlined in Stone Oil's manuals." R. Doc. 36 at 3. Defendant submits "Borison cites to two separate policy provisions contained in Stone Oil's Safety Manual Policies & Procedures and Stone Oil's Safety Policy Manual." R. Doc. 36 at 3. Further, according to Defendant, "[t]his Court has previously rejected such arguments and has denied a prior motion *in limine* seeking exclusion of Borison on this exact ground." R. Doc. 36 at 8–9.

The Court agrees with Defendant that the report of its liability expert, Robert Borison, should not be excluded. Borison's report cites to two separate policy provisions contained in Stone Oil's Safety Manual Policies & Procedures and Stone Oil's Safety Policy Manual. The provisions state: "No one should stand under a suspended load or should the operator pass a load over personnel," R. Doc. 36-5 at 63, and instruct personnel to "[s]tand clear of lines or wires when they have a strain on them," R. Doc. 36-6 at 9. Moreover, Borison has over 50 years of experience in the safety field, upon which he bases his opinions. Therefore, the Court finds Borison's report is based on a sufficient factual foundation supported by his experience in the industry as well as

Stone Oil's Safety Manuals. Any challenges to Borison's opinions are ripe for cross examination and affect only the weight of his opinion rather than its admissibility.

### 2. Whether the opinions of Defendant's medical experts are cumulative

Pursuant to Rule 403 of the Federal Rule of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." However, the Fifth Circuit has held that "[t]he exclusion of evidence under Rule 403 should occur only sparingly." *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993). Additionally, the Fifth Circuit has not put a precise limit on the number of experts that can testify regarding a particular issue. *See Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 411 (5th Cir. 1989). Multiple experts may testify to the same conclusion if they approached their individual analyses from separate "vantage points." *See Sanchez v. Swift Transp. Co. of Ariz., LLC*, No. 4:15CV15-LG, 2017 U.S. Dist. LEXIS 204892 (W.D. Tex. July 19, 2017); *Thomas v. W&T Offshore, Inc.*, No. CV 16-14694, 2018 WL 4095099, at *3 (E.D. La. Aug. 27, 2018). Because "[i]t is difficult . . . to determine the necessity and cumulative effect of testimony by several experts," the Court has wide discretion in allowing experts to testify. *See Leefe*, 876 F.2d at 411.

Plaintiff argues the opinions of Defendant's medical experts Dr. Everett Robert and Dr. Archie Melcher should be excluded because they are "needlessly cumulative." R. Doc. 30-1 at 3. According to Plaintiff, having two doctors present evidence on the same condition will confuse and mislead the jury into thinking Defendant's opinion should be given more weight. *Id.* Plaintiff contends Defendant's claim that each doctor approached Plaintiff's diagnosis from a different vantage point is a "red herring" because neurologists and neurosurgeons practice the same medical

specialty, neurology. R. Doc. 41 at 2. Further, according to Plaintiff, "both doctors rendered the same exact opinion regarding the same exact brain injury . . . ." R. Doc. 41 at 2.

In opposition, Defendant argues the opinions of Dr. Melcher and Dr. Robert are not cumulative because they each approach Plaintiff's medical condition from a different vantage point. R. Doc. 33 at 7. Defendant contends, "Dr. Robert will primarily testify regarding the alleged cause of Parker's subjective complaints of continued neck pain," while "Dr. Melcher will primarily testify as to the cause of Parker's alleged head/brain injury and white matter changes." R. Doc. 33 at 10. Additionally, according to Defendant, Dr. Melcher and Dr. Robert used their different specialties to approach their individual evaluations of Plaintiff's medical condition. R. Doc. 33 at 10. Defendant submits the testimony of Dr. Melcher and Dr. Robert may overlap at times, but they will "offer separate opinions on separate injuries using a separate analysis." R. Doc. 33 at 11.

The Court will deny Plaintiff's motion *in limine* to exclude the opinions of Defendant's medical experts. Dr. Robert and Dr. Melcher approached their individual evaluations of Plaintiff from different "vantage points" as they practice different specialties. The Court recognizes Plaintiff's contention that neurosurgeons and neurologists both stem from the study of neurology, but here each doctor took a different approach in evaluating Plaintiff. Dr. Robert relied upon his physical examination and diagnostic images of Plaintiff, whereas Dr. Melcher relied upon Plaintiff's past medical history, diagnostic tests, and the symptoms Plaintiff reported to Dr. Shamsnia and Dr. Bartholomew. Therefore, while there may be overlap in their testimony, the reports of Dr. Robert and Dr. Melcher are not cumulative of each other. Coming to the same conclusion does not make the reports duplicative. Any objection to Dr. Robert and Dr. Melcher's conclusions are ripe for cross examination and speak only to the weight of their reports and not their admissibility. If at trial Dr. Robert's testimony duplicates Dr. Melcher's, or vice versa,

6

Plaintiff may object to the testimony at that time.

### b. Whether Plaintiff's safety expert presents relevant testimony that will aid the fact-finder in resolving a factual dispute

The second prong to ensure expert testimony is "reliable and relevant," looks primarily to the issue of relevancy. *Daubert*, 509 U.S. at 589. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." Advisory Committee Notes Fed. R. Evid. 702. Assisting the finder of fact requires the expert testimony to reveal more than the attorneys in arguments can offer. *See In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986).

#### 1. Whether the opinions of Plaintiff's safety expert fall into the common knowledge and experience of the fact-finder

Pursuant to the Advisory Committee's Notes on Federal Rules of Evidence 702,

> There is no more certain a test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligibly and to the best possible degree the particular issue without enlightenment from those having specialized understanding of the subject involved in the dispute.

(quoting Mason Ladd, *Expert Testimony*, 5 Vand. L. Rev. 414, 418 (1952)). Expert testimony does not assist the fact-finder when the jury "could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449 (5th Cir. 1990). However, complex issues are considered to fall outside the scope of the jury's common experience and knowledge. *See In re Horizon Vessels, Inc.*, No. CIV. H-03-3280, 2007 WL 655927, at *8 (S.D. Tex. Feb. 28, 2007); *McMullen v. BP Expl. & Prod.*, No. CIV.A. 12-1206, 2013 WL 2556032, at *7 (E.D. La. June 10, 2013).

Defendant argues the opinions of Plaintiff's safety expert, Don J. Green, should be excluded because they "do not provide any scientific, technical or other specialized

knowledge." R. Doc. 31-1 at 1. According to Defendant, Green renders opinions that fall within the common knowledge and experience of the fact-finder: a defective line caused the alleged incident and if Defendant "had implemented and/or maintained an inspection program for nylon lines," then the alleged incident would not have occurred. R. Doc. 31-1 at 8–9. Defendant contends "Green cites to absolutely no guidelines, federal regulations, and/or industry standards . . . nor does he offer any specialized knowledge or expertise regarding securing a tow, shackles, face wires, or nylon ropes." R. Doc. 31-1 at 10.

In opposition, Plaintiff argues Green's testimony will help the jury understand marine safety procedures and how Defendant's conduct caused Plaintiff's alleged incident. R. Doc. 34 at 1. According to Plaintiff,

> At trial, Commander Green will testify about the customary practices utilized on a vessel of the sort on which plaintiff was injured, and . . . the proper safety instructions usually given, safety and inspection steps taken during building tow, the maintenance of work areas to ensure that they are free from hazards and other unsafe practices . . . .

R. Doc. 34 at 8. Plaintiff contends all of the information Green will testify to is outside the scope of a layman's knowledge, and his testimony will be of the utmost importance to assist the jury in understanding "the critical facts and concepts at issue." R. Doc. 34 at 8.

The Court agrees with Plaintiff that his safety expert, Don J. Green, will assist the jury in understanding the issues of this case. While common experience and knowledge dictates that a defective nylon line may cause an accident, how a maritime company such as Defendant is expected to maintain and/or inspect its nylon lines it is outside the scope of the jury's knowledge. Further, the jury will be assisted by Green's more than 50 years of marine experience in understanding this case. The Court notes, however, that Green's testimony must be limited to the contents of his report (noting that cross examination during his deposition could expand the scope

of his testimony). *See, e.g. Richardson v. SEACOR Lifeboats, LLC*, No. CIV.A. 14-1712, 2015 WL 2193907, at *2 (E.D. La. May 11, 2015). If at trial Green's testimony goes beyond the scope of his report or any relevant deposition testimony, Defendant may object at that time.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion *in Limine* to Exclude the Opinions of Robert Borison, R. Doc. 29, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion *in Limine* to Exclude Cumulative Opinions of Dr. Everett Robert and Dr. Archie Melcher, R. Doc. 30, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion *in Limine* to Exclude the Opinions of Plaintiff's Safety Expert, Don J. Green, R. Doc. 31, is hereby **DENIED**.

New Orleans, Louisiana, this 28th day of June, 2019.

ELDON E. FALLON
U.S. DISTRICT COURT JUDGE