UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEREMY A. PARKER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-3666** |
| **JOHN W. STONE OIL DISTRIBUTORS, L.L.C.** | **SECTION "L" (2)** |

### ORDER & REASONS

Before the Court are the following Motions: (1) Plaintiff's Motion *in Limine* to Exclude Certain Anticipated Testimony of Dr. Archie Melcher, R. Doc. 64; (2) Plaintiff's Motion *in Limine* to Exclude Certain Anticipated Testimony of Dr. Dennis Occhipinti, R. Doc. 65; (3) Plaintiff's Motion *in Limine* to Exclude Certain Anticipated Testimony of Dr. Everett Robert, R. Doc. 66; and (4) Plaintiff's Motion *in Limine* to Exclude Certain Anticipated Testimony of Dr. Richard Roniger, R. Doc. 67. The motions are all opposed. R. Doc. 69. Plaintiff filed a reply. R. Doc. 70. Defendant filed a sur-reply. R. Doc. 74-1. The Court now rules as follows.

I.    **BACKGROUND:** *JONES ACT PERSONAL INJURY*

This case arises from injuries Plaintiff Jeremy Parker, a Jones Act seaman, allegedly sustained while working as a tankerman aboard a vessel, the *M/V PRESAGER*, owned by Defendant John W. Stone Oil Distributors LLC. R. Doc. 1 at 2. Plaintiff claims a fellow crewmember pulled on a face wire, causing a line to pop, which resulted in a 10-pound shackle falling approximately ten feet and hitting Plaintiff in the head. R. Doc. 30-1 at 1. Plaintiff alleges this impact caused serious injuries to his neck and head and rendered him unfit for duty as a seaman. R. Doc. 30-1 at 1. According to the Complaint, the sole and proximate cause of the accident was Defendant's negligence and maintenance of an unseaworthy vessel. R. Doc. 1 at 2–

1

3. Accordingly, Plaintiff seeks to recover past, present, and future physical, mental and emotional pain and suffering; loss of wages and wage-earning capacity; medical expenses; past and future physical disability; and past, present, and future maintenance and cure. R. Doc. 1 at 3.

Defendant contests the cause of Plaintiff's accident and asserts Plaintiff placed himself in an unsafe position in violation of Defendant's safety rules. R. Doc. 35 at 1. Further, Defendant alleges Plaintiff failed to inspect the line in question prior to its use. R. Doc. 35 at 1.

## II. PRESENT MOTION

Plaintiff has filed four Motions *in Limine* to exclude testimony by expert witnesses at trial. R. Docs. 64–67. Specifically, Plaintiff objects to anticipated testimony by: (1) Dr. Archie Melcher regarding Plaintiff's prior medical history, R. Doc. 64; (2) Dr. Dennis Occhipinti regarding his opinion on the existence and effects of Plaintiff's multiple sclerosis, R. Doc. 65; (3) Dr. Everett Robert regarding Plaintiff's prior medical history, R. Doc. 66; and (4) Dr. Richard Roniger regarding Plaintiff's prior head injury, R. Doc. 67. Defendant filed an opposition to Plaintiff's motions. R. Doc. 69. Plaintiff filed a reply. R. Doc. 70. Defendant filed a sur-reply. R. Doc. 74-1. The Court will now address each of Plaintiff's motions in turn.

## III. STANDARD OF REVIEW

### a. Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rule of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule codifies the Supreme Court's decisions in *Daubert v. Merrell Dow*

*Pharma., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The Court must act as a "gate-keeper" to ensure the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). This requires the Court conduct a two-pronged assessment to determine whether the expert testimony is: (1) based on reliable methodology and (2) will assist the trier of fact to understand the evidence or to determine a fact in issue. *See Daubert*, 509 U.S. at 589–91. But ultimately, a court's role as a gatekeeper does not replace the adversary system. *Id.* at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Proper deference is to be accorded to the jury's role "as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* (quoting *Viterbo*, 826 F.2d at 422).

**b. Relevance**

Pursuant to Federal Rule of Evidence 402, only relevant evidence is admissible. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The standard "is not a steep or difficult one to satisfy." *Pub. Emps. Retirement Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014); *see also Daubert*, 509 U.S. at 587 (characterizing the rule governing relevance as "a liberal one"). Moreover, the trial judge maintains great discretion in evidentiary determinations, *see Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (recognizing

that "limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial"), which are reversed "only when the district court clearly abused its discretion and a party's substantial rights were affected." *Guerra v. N. E. Indep. Sch. Dist.*, 496 F.3d 415, 419 (5th Cir. 2007) (citing *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277 (5th Cir.1991)).

## IV. DISCUSSION

### a. Dr. Archie Melcher's anticipated testimony concerning Plaintiff's prior injury

In the first Motion *in Limine*, Plaintiff argues Dr. Archie Melcher should be precluded from testifying as to the contents of Plaintiff's medical records for a prior injury. R. Doc. 64-1 at 4–5. Specifically, in 2008, it appears that Plaintiff sustained an orbital fracture from a separate incident. *See* R. Doc. 64-1 at 4–5. Plaintiff anticipates Defendant will argue the prior event caused Plaintiff's current injuries rather than the incident at issue in this case and in doing so, Plaintiff fears Dr. Melcher will merely "regurgitate" the medical records for the prior injury. *See* R. Doc. 64-1 at 4–5. Such testimony, Plaintiff argues, is inadmissible because it constitutes "classic hearsay" and is irrelevant to this case. R. Doc. 64-1 at 4. In opposition, Defendant does not address Plaintiff's hearsay argument directly but counters that evidence of Plaintiff's prior injuries is "obviously relevant" to this case. R. Doc. 69 at 15. In reply, Plaintiff again argues "[t]here is no evidence that the orbital fracture, which occurred almost ten years ago, has any bearing on plaintiff's current injuries," and it should therefore be excluded from trial. R. Doc. 70-1 at 1.

#### i. Hearsay

As an initial matter, medical records do not *per se* amount to "classic hearsay" as Plaintiff asserts. R. Doc. 64-1 at 4. Medical records are routinely admitted via the business records exception under Fed. R. Evid. 803(6)(B). *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th

Cir. 1991) ("Rule 803(6) provides a hearsay exception for records kept in the course of *any* regularly conducted business activity, which would include hospitals."); *see, e.g.*, *Rodgers v. Hopkins Enterprises of Mississippi LLC*, No. CV 17-6305, 2018 WL 6335778, at *1 (E.D. La. Dec. 5, 2018); *Wright v. Nat'l Interstate Ins. Co.*, No. CV 16-16214, 2017 WL 3686562, at *2 (E.D. La. Aug. 25, 2017). At present, the Court lacks evidence that the proffered records were not kept in the course of regularly conducted business. As such, the Court declines to prematurely define the medical records as hearsay.

Plaintiff highlights the perils of an expert simply reciting the findings of other experts. *See* R. Doc. 64-1 at 4. Plaintiff also argues, and the Court agrees, that while an expert may rely on hearsay to form an opinion, *see* Fed. R. Evid. 703, it does not automatically convert the hearsay into admissible evidence. *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 413 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F. App'x 256 (5th Cir. 2018) ("While experts are allowed to rely on hearsay in forming their opinions, 'their testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced.'") (internal citation omitted). However, Plaintiff seems more concerned with the bases for Dr. Melcher's testimony rather than the actual records he used to develop his opinions. *See* R. Doc. 64-1 at 4–5. This raises a separate issue governed by Federal Rule of Evidence 703 ("Bases of an Expert's Opinion Testimony") and not only the rule against hearsay evidence. In fact, the case Plaintiff cites also frames the issue of the admissibility of expert evidence when the expert relies on hearsay evidence in the context of Federal Rule of Evidence 703. *Covington v. Noble Drilling U.S. LLC*, No. CV 16-12316, 2017 WL 2964011, at *2 (E.D. La. May 4, 2017) (citing Fed. R. Evid. 703 to determine whether expert testimony should be excluded that mostly relies on other expert reports); *see also Balfour Beatty Rail*, 173 F. Supp. 3d at 413.

In sum, the Court declines to rule ahead of trial whether Dr. Melcher's anticipated testimony constitutes inadmissible hearsay or whether there is a sufficient basis for Dr. Melcher's anticipated testimony. Because these objections are context-specific, Plaintiff may raise an objection to Dr. Melcher's testimony at trial if and when it becomes necessary to do so.

### ii. Relevance

Plaintiff also argues Dr. Melcher's anticipated testimony on Plaintiff's prior injury is irrelevant because it pertains to a "wholly unrelated prior medical condition[]" with "little to no probative value under the circumstances in this case." R. Doc. 64-1 at 5. Defendant responds that the evidence is "obviously relevant." R. Doc. 69 at 15. To the extent Defendant's theory of the case is that an earlier injury caused Plaintiff's present condition rather than the incident in question, the Court concludes the prior injury may be relevant to prove causation. *See, e.g.*, *Bonds v. Padlock*, No. CIV.A. 06-7830, 2008 WL 4889794, at *3 (E.D. La. Nov. 10, 2008) (noting the "diagnosis, treatment, and symptoms" from an earlier injury "are directly relevant" to the issue of whether preexisting conditions were aggravated by the more recent injury).

Plaintiff appears to argue the two injuries he suffered are so unrelated that the former could not possibly be relevant to the latter. *See* R. Doc. 64-1 at 4–5. This is entirely possible, but at this stage, the parties have not yet presented all the information necessary for the Court to make a relevance determination. *See Auenson v. Lewis*, No. CIV. A. 94-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) ("[E]vidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds. Such evidentiary rulings should be reserved until trial so that questions of foundation, competency, relevancy, and potential prejudice may be resolved in the proper context."). That is, relevance rulings are contextual, and the Court simply lacks the context to rule at this time. *See id.* Plaintiff may wish to raise this objection again at trial once

expert testimony is elicited. Furthermore, to the extent Plaintiff wishes to challenge Defendant's theory that the two injuries are tethered, Plaintiff may do so during cross-examination of Defendant's expert witnesses. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, the Court denies Plaintiff's motion to exclude the anticipated testimony of Dr. Melcher regarding Plaintiff's prior injury, but will allow the Plaintiff to raise an objection to the testimony at trial if necessary at that time.

      **b. Dr. Dennis Occhipinti's anticipated testimony concerning the existence and effects of Plaintiff's multiple sclerosis on Plaintiff's current condition**

In the second Motion *in Limine*, Plaintiff argues Dr. Dennis Occhipinti should be precluded from testifying about a diagnosis of multiple sclerosis in Plaintiff and its impacts on Plaintiff's current condition. R. Doc. 65-1 at 6–7. Plaintiff argues that such testimony exceeds the scope of Dr. Occhipinti's expertise and is irrelevant to this matter. R. Doc. at 6–7. Dr. Occhipinti is an Ear, Nose, and Throat doctor ("ENT") retained by Defendant as a rebuttal witness to Plaintiff's treating ENT. R. Doc. 65-1 at 6. In his expert report, Dr. Occhipinti opines that "multiple sclerosis [is] the most likely culprit for this intermittent symptomatology." R. Doc. 65-2 at 4. Further, Dr. Occhipinti states that Plaintiff's white matter abnormalities are "more likely than not unrelated to the [past] trauma." R. Doc. 65-2 at 2. Plaintiff argues these statements are inadmissible because they are outside the scope of Dr. Occhipinti's expertise and are irrelevant. R. Doc. 65-1 at 6–7. Defendant counters Dr. Occhipinti "is clearly qualified to give an opinion as to the existence and/or cause of vertigo or dizziness" because "he is a board certified ENT and has practiced in Louisiana for over 40 years." R. Doc. 69 at 15. In reply, Plaintiff again argues Dr. Occhipinti does not have any "experience, knowledge, skill, training or education regarding multiple sclerosis" and should

therefore not be allowed to render opinions on this subject. R. Doc. 70-1 at 3.

The Court agrees with Defendant and declines to exclude Dr. Occhipinti's testimony about his opinions on whether multiple sclerosis caused Plaintiff's symptoms. Because Dr. Occhipinti is an ENT, Plaintiff argues he "should not be allowed to render a causation opinion that a neurological disease like multiple sclerosis is the cause of Mr. Parker's symptoms." R. Doc. 65-1 at 7. However, it seems axiomatic that an attending physician would consider alternate explanations for a patient's symptoms. In this case, it appears as though Dr. Occhipinti merely matched a prior diagnosis to the symptoms he observed in Plaintiff. R. Doc. 65-2 at 1–4. Courts in and around this district have sometimes allowed the testimony of medical experts to reference areas outside of one's particular expertise. *See, e.g.*, *Harmeyer v. Dohm*, No. CIV.A. 06-4220, 2007 WL 4294667, at *5 (E.D. La. Mar. 7, 2007) (allowing neurosurgeon to testify as to knee pain); *Bowie v. Am. Home Assur. Co.*, No. CIV.A. 05-1381-JJB, 2009 WL 3254500, at *2 (M.D. La. June 3, 2009) (allowing spine surgeon to testify "on all areas of orthopedics" including knee injuries). Thus, allowing Dr. Occhipinti to opine on the impact of Plaintiff's medical history on Plaintiff's current symptoms does not constitute unreliable methodology in violation of *Daubert*. To the extent Plaintiff wishes to challenge the bases for Dr. Occhipinti's testimony, Plaintiff may do so during cross-examination of the witness.

  **c. Dr. Everett Robert's anticipated testimony concerning the contents of Plaintiff's medical records**

In the third Motion *in Limine*, Plaintiff argues that Dr. Everett Robert should be precluded from testifying as to the contents of Plaintiff's medical records. R. Doc. 66-1 at 4–5. More specifically, Plaintiff seeks to exclude the portion of Dr. Robert's report where he summarizes Plaintiff's prior medical history. R. Doc. 66-1 at 4; R. Doc. 66-2 at 2–4. Plaintiff argues the prior medical records constitute hearsay and are irrelevant to this matter. R. Doc. 66-1 at 4–5. Although

related to a slightly different subject matter, Plaintiff's argument for excluding parts of Dr. Robert's anticipated testimony mirrors the argument made for excluding parts of Dr. Melcher's anticipated testimony as discussed earlier.

As explained more thoroughly in the context of Plaintiff's objection to Dr. Melcher's anticipated testimony, the Court lacks enough information at this time to preemptively bar Dr. Robert's testimony. To the extent Plaintiff is concerned that Plaintiff's written medical history will be shown to the jury, the Court reminds the parties that neither Dr. Robert's expert report, nor any expert report at issue here, will be admissible in court because each is an example of classic hearsay. *Marquette Transp. Co. v. Eagle Subaru*, No. CIVA 06-9053, 2010 WL 1558921, at *3 (E.D. La. Apr. 15, 2010) ("Expert reports are hearsay because they are out of court statements offered to prove the truth of the matter asserted."). Therefore, Plaintiff is free to object at trial in the event Dr. Robert—or any other expert, for that matter—recites word-for-word what is written in his expert report. Until such testimony is elicited, however, the Court declines to rule that the testimony is irrelevant and inadmissible.

**d. Dr. Richard Roniger's anticipated testimony concerning Plaintiff's past injury**

In the fourth Motion *in Limine*, Plaintiff argues Dr. Roniger should be precluded from testifying as to statements made by other doctors in their respective depositions and to Plaintiff's prior orbital fracture. R. Doc. 67-1 at 4–5. Plaintiff argues that it would be cumulative and not assist the jury if Dr. Roniger "recites what the reports of [other] doctors and experts purport to state." R. Doc. 67 at 4. Separately, Plaintiff argues that reference to Plaintiff's prior orbital fracture is irrelevant and prejudicial. R. Doc. 67 at 4. With response to Dr. Roniger's reliance on other experts' reports, Defendant counters that "Dr. Roniger is allowed to review those records and make determinations thereupon." R. Doc. 69 at 2. As for the relevance of Plaintiff's prior injury,

Defendant states that such evidence is "obviously relevant." R. Doc. 69 at 15. In reply, Plaintiff again argues "[t]here is no evidence that the orbital fracture, which occurred almost ten years ago, has any bearing on plaintiff's current injuries," and it should therefore be excluded from trial. R. Doc. 70-1 at 1.

Defendant is correct that an expert witness may rely on outside reports to form an opinion. *See* Fed. R. Evid. 703*; see also LaShip, LLC v. Hayward Baker, Inc.*, 296 F.R.D. 475, 483 (E.D. La. 2013) ("The Court acknowledges, however, that a 26(a)(2)(C) expert witness may rely on information provided by others pursuant to 703."). However, as discussed in the context of Plaintiff's objection to Dr. Robert's testimony, the expert report itself constitutes inadmissible hearsay. *See Marquette*, 2010 WL 1558921, at *3. In the event Dr. Roniger recites word-for-word from his report or other experts' reports while on the stand, Plaintiff may object at that time.

As to the relevance of Plaintiff's earlier orbital fracture, the Court repeats that a relevance determination is contextual, *see Auenson*, 1996 WL 457258, at *1, and the Court lacks enough information to rule on relevance at this time. Likewise, the Court cannot determine whether this anticipated testimony cumulative before seeing what evidence is presented at trial. Therefore, Plaintiff may assert these objections again at trial if necessary at that time.

On a separate note, Defendant raises the prospect of using Dr. Roniger's testimony to impeach Plaintiff's credibility through his criminal record; yet this issue is not addressed in any of Plaintiff's motions. R. Doc. 69 at 2–3. The Court will use this opportunity to clarify the admissibility of Plaintiff's criminal history at trial. Evidence of Plaintiff's past conviction is only admissible to impeach his character for truthfulness if the requirements under Federal Rule of Evidence 609 are met. Namely, Plaintiff's credibility may only be impeached if he himself testifies as a witness. Fed. R. Evid. 609 ("The following rules apply to attacking a *witness's* character for

truthfulness by evidence of a criminal conviction[.]") (emphasis added). As such, Dr. Roniger may not use Plaintiff's prior criminal history to impeach Plaintiff's credibility. In the event Plaintiff does testify at trial, Defendant may attempt to impeach his credibility using his criminal history at that time, and Plaintiff may in turn object as needed.

V. **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the following Motions *in Limine* are **DENIED**: (1) Plaintiff's Motion to Exclude Certain Anticipated Testimony of Dr. Archie Melcher, R. Doc. 64; (2) Plaintiff's Motion to Exclude Certain Anticipated Testimony of Dr. Dennis Occhipinti, R. Doc. 65; (3) Plaintiff's Motion to Exclude Certain Anticipated Testimony of Dr. Everett Robert, R. Doc. 66; and (4) Plaintiff's Motion to Exclude Certain Anticipated Testimony of Dr. Richard Roniger.

The Court again emphasizes that each of Plaintiff's motions pertains to anticipated testimony by Defendant's experts; if and when such testimony is elicited at trial, Plaintiff may object at that time.

New Orleans, Louisiana, this 16th day of October, 2019.

ELDON E. FALLON
U.S. DISTRICT COURT JUDGE